IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MALLINCKRODT IP, MALLINCKRODT HOSPITAL PRODUCTS INC., and SCR PHARMATOP, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. _____ |
| v. | ) ) | |
| B. BRAUN MEDICAL INC., | ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Mallinckrodt IP, Mallinckrodt Hospital Products Inc., and SCR Pharmatop ("Plaintiffs") for their Complaint against defendant B. Braun Medical Inc. ("Braun"), allege as follows:

### PARTIES

1.       Plaintiff Mallinckrodt IP is a company organized and existing under the laws of Ireland, having a registered address of Damastown Industrial Estate, Mulhaddart, Dublin 15, Ireland. Mallinckrodt IP is a wholly-owned subsidiary of Mallinckrodt plc. As set forth herein, Mallinckrodt IP is the assignee of U.S. Patent No. 9,399,012 ("the '012 patent") and is the exclusive sub-licensee of U.S. Patent No. 6,992,218 ("the '218 patent") (collectively, the "patents-in-suit").

2.       Plaintiff Mallinckrodt Hospital Products Inc. ("Mallinckrodt Hospital Products"), formerly Cadence Pharmaceuticals, Inc. ("Cadence"), is a company organized and existing under the laws of Delaware, having a principal place of business at 675 McDonnell Blvd., St. Louis, Missouri 63042. Mallinckrodt Hospital Products is a wholly-owned subsidiary of Mallinckrodt plc.

3.      Plaintiff SCR Pharmatop ("Pharmatop") is a business entity organized and existing under the laws of France, having its headquarters at 10, Square St. Florentin, 78150 Le Chesnay, France. As set forth herein, Pharmatop is the assignee of the '218 patent.

4.      Upon information and belief, Defendant Braun is a company organized under the laws of Pennsylvania, having a principal place of business at 824 Twelfth Avenue, Bethlehem, Pennsylvania 18018. Upon information and belief, Braun is in the business of manufacturing, distributing, and selling pharmaceutical products throughout the United States, including in this judicial district.

## NATURE OF THE ACTION

5.      This is a civil action for infringement of the patents-in-suit pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq.*; the Federal Food, Drug, and Cosmetic Act; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

7.      This Court has personal jurisdiction over Braun because, upon information and belief, *inter alia*, Braun has registered to do business in Delaware pursuant to Del. Code Ann. Title 8, §§ 371(b)(2), 376(a), and has appointed an agent to accept service of process there. This Court has personal jurisdiction over Braun for the additional reasons set forth below and for other reasons that will be presented to the Court if such jurisdiction is challenged.

8.      This Court has personal jurisdiction over Braun because, *inter alia*, Braun has purposefully availed itself of the rights and benefits of Delaware law by engaging in systematic and continuous contacts with Delaware.

9.      Upon information and belief, Braun regularly and continuously transacts business

within the State of Delaware, including by selling pharmaceutical products in Delaware. Upon information and belief, Braun derives substantial revenue from the sale of those products in Delaware and has availed itself of the privilege of conducting business within the State of Delaware. Upon information and belief, Braun has registered with the Delaware Board of Pharmacy as a licensed "Pharmacy – Wholesale" under License Nos. A4-0000857 and A4-0001521.

10.     Braun has admitted that it "sells products within this district." *Hospira, Inc. v. B. Braun Med. Inc.*, No. 13-819, D.I. 8 at 3. Braun further admitted that "it sells and offers to sell products and services in this judicial district, and introduces products and services into the stream of commerce knowing that they would be sold in this judicial district and elsewhere in the United States." *Rydex Techs. LLC v. B. Braun Med. Inc.*, No 13-663, D.I. 7 at 2. Upon information and belief, Braun did not challenge this Court's exercise of personal jurisdiction over it in at least *Fresenius Kabi USA, LLC v. B. Braun Med. Inc.*, No. 16-250. Braun has purposefully availed itself of the benefits of this district by filing complaints for patent infringement in this district. *See B. Braun Melsungen AG v. Becton, Dickinson & Co.*, No. 16-411; *B. Braun Melsungen AG v. Terumo Med. Corp.*, No. 09-347. Braun has also filed patent-related counterclaims in this district. *See Hospira Inc. v. B. Braun Medical Inc.*, No. 13-819; *Rydex Techs. LLC v. B. Braun Med. Inc.*, No. 13-663.

11.     This court has personal jurisdiction over Braun because, *inter alia*, upon information and belief, Braun has submitted New Drug Application ("NDA") No. 204957, claiming bioequivalence to Plaintiffs' OFIRMEV® injectable acetaminophen product and seeking nationwide approval of its proposed product. Braun's submission of NDA No. 204957 constitutes infringement of the patents-in-suit pursuant to 35 U.S.C. § 271(e). Braun's tortious

act of infringing the patents-in-suit causes concrete harm to Mallinckrodt Hospital Products, a Delaware corporation, as well as Mallinckrodt IP and Pharmatop. By a letter received by Plaintiffs on February 23, 2017 (the "Braun Letter"), Braun stated that it had submitted NDA No. 204957 seeking approval to engage in the commercial manufacture, use, sale or offer for sale, and/or importation of acetaminophen for injection 10 mg/ml ("Braun's Generic Product") prior to the expiration of the '218 patent. The Braun Letter was directed to Cadence (now Mallinckrodt Hospital Products), a Delaware corporation.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

13.     This action involves patents that are or were at issue in other actions before this Court. The '218 patent was at issue in the action captioned *Cadence Pharmaceuticals, Inc. v. Exela Pharma Sciences, LLC*, No. 11-733, and is currently at issue in the action captioned *Cadence Pharmaceuticals, Inc. v. InnoPharma Licensing LLC*, No. 14-1225. The '012 patent is at issue in the action captioned *Mallinckrodt IP v. InnoPharma Licensing LLC*, No. 16-1116.

## THE PATENTS-IN-SUIT

14.     The '218 patent, titled "Method for Obtaining Aqueous Formulations of Oxidation-Sensitive Active Principles," was duly and legally issued by the United States Patent and Trademark Office ("PTO") on January 31, 2006. The named inventors assigned the application which issued as the '218 patent to Pharmatop.

15.     Pharmatop granted an exclusive license to the '218 patent to Bristol-Myers Squibb Company ("BMS") with a right to sublicense. BMS granted Cadence (now Mallinckrodt Hospital Products) a sublicense, which was exclusive even to BMS, to the '218 patent with regard to all rights pertinent hereto. As a result of the corporate restructuring following the purchase of Cadence by Mallinckrodt plc, Mallinckrodt IP is the exclusive sub-licensee of the

'218 patent. A true and correct copy of the '218 patent is attached as Exhibit A.

16.     The '012 patent, titled "Reduced Dose Intravenous Acetaminophen," was duly and legally issued by the PTO on July 26, 2016. The named inventors assigned the application that issued as the '012 patent to Cadence, which subsequently assigned that application to Mallinckrodt IP. Mallinckrodt IP is now the sole assignee of the '012 patent. A true and correct copy of the '012 patent is attached as Exhibit B.

## OFIRMEV®

17.     Cadence obtained approval from the Food and Drug Administration (the "FDA") for NDA No. 022450 for OFIRMEV®, the first and only intravenous (IV) formulation of acetaminophen available in the United States. As part of the corporate restructuring resulting from the purchase of Cadence by Mallinckrodt plc, Mallinckrodt IP is now the holder of NDA No. 022450.

18.     OFIRMEV® was approved by the FDA on November 2, 2010. OFIRMEV® is indicated for the treatment of mild to moderate pain, management of moderate to severe pain with adjunctive opioid analgesics, and reduction of fever.

19.     The publication "Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book") identifies drug products approved on the basis of safety and effectiveness by the FDA under the Federal Food, Drug, and Cosmetic Act. Pursuant to 21 U.S.C. § 355(b)(1) and attendant FDA regulations, the '218 and '012 patents were timely listed in the Orange Book with respect to OFIRMEV®.

## DEFENDANT'S INFRINGEMENT OF THE PATENTS-IN-SUIT

20.     Upon information and belief, Braun submitted NDA No. 204957 to the FDA under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(b)), seeking approval to engage in the commercial manufacture, use, sale or offer for sale, and/or importation of Braun's

Generic Product, prior to the expiration of the '218 and '012 patents, both of which are listed in the Orange Book with respect to OFIRMEV®.

21.     In the Braun Letter, Braun stated that it had submitted NDA No. 204957 seeking approval to engage in the commercial manufacture, use, sale or offer for sale, and/or importation of Braun's Generic Product prior to the expiration of the '218 patent.

22.     The Braun Letter also states that NDA No. 204957 contains a certification under 21 U.S.C. § 355(b)(2)(A)(iv) (the "Paragraph IV certification") alleging that the '218 patent is "invalid, unenforceable and/or will not be infringed by the manufacture, use, or sale of the product for [sic: which] B. Braun's NDA is submitted."

23.     Upon information and belief, Braun has taken substantial steps to prepare for the importation, marketing, commercial manufacture, sale and/or offer for sale of Braun's Generic Product.

24.     Braun's submission of NDA No. 204957 to the FDA, including its Paragraph IV certification, constitutes infringement of the '218 patent under 35 U.S.C. § 271(e)(2)(A). In the event that Braun commercially manufactures, imports, uses, offers for sale, or sells Braun's Generic Product or induces or contributes to such conduct, said actions would constitute infringement of the '218 patent under 35 U.S.C. § 271(a), (b), and/or (c).

25.     Upon information and belief, the only viable way of manufacturing an acetaminophen solution with prolonged stability is to deoxygenate the solution (or the equivalent thereof) to below 2 ppm oxygen. For instance, the proposed generic Exela Pharma Sciences product was found by this Court to have infringed claims of the '218 patent, and the Cadence product was deemed to be a commercial embodiment thereof. *See Cadence Pharm., Inc. v. Exela Pharma Scis., LLC*, No. 11-733, 2013 WL 11083853 (D. Del. Nov. 14, 2013), *aff'd*, 780 F.3d

1364 (Fed. Cir. 2015)). Wockhardt Bio AG ("Wockhardt") and Agila Specialties Inc. ("Agila") have stipulated to infringement of the '218 patent with regard to their proposed generic versions of OFIRMEV®. BMS; Cadence; Mallinckrodt; Wockhardt; Agila; Paddock Laboratories, Inc.; Fresenius Kabi USA, LLC; and Sandoz, Inc. have taken licenses to the '218 patent. And Perfalgan, the European counterpart of OFIRMEV®, is deoxygenated to below 2 ppm oxygen. *See Cadence*, 2013 WL 11083853, at *5, *33 n.34.

26.     Pursuant to 21 U.S.C. §§355(b)(2)-(3), because the '012 patent was timely listed in the Orange Book Braun is obligated to provide a patent certification with respect to the '012 patent and to notify Plaintiffs of its certification. Braun stated in the Braun Letter that it had submitted NDA No. 204957 seeking approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of Braun's Generic Product prior to the expiration of the '218 patent. Given that Braun acknowledged the existence of the '012 patent in the Braun Letter, and the '012 patent expires after the '218 patent, Braun necessarily is seeking approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of Braun's Generic Product prior to the expiration of the '012 patent. Therefore, upon information and belief, Braun is required to submit a certification under 21 U.S.C. § 355(b)(2)(A)(iv) with regard to the '012 patent.

27.     However, Plaintiffs have not received any notification from Braun of a certification with respect to the '012 patent. Pursuant to 35 U.S.C. § 271(e)(2), "[i]t shall be an act of infringement to submit an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent." 35 U.S.C. § 271(e)(2). Braun's submission of its NDA seeking approval for Braun's Generic Product is an act of infringement with regard to one or

more claims of the Orange Book-listed '012 patent pursuant to 35 U.S.C. § 271(e)(2). *See, e.g.*, *The Meds. Co. v. Eagle Pharm., Inc.*, No. 16-569, 2016 WL 4418230 (D.N.J. Aug. 17, 2016) (holding jurisdiction existed where patents asserted were not listed in Orange Book); *Research Found. of State Univ. of N.Y. v. Mylan Pharm. Inc.*, No. 09-184, 2012 WL 1901267, at *4 (D. Del. May 25, 2012) ("[A] Paragraph IV certification against the [patent] is not required [for a patentee] to bring suit under Section 271(e)(2)").

28.     Upon information and belief, the FDA will require the labeling for Braun's Generic Product to be substantially identical to the approved labeling for OFIRMEV®, and Braun's Generic Product, if approved, will be marketed, sold, and/or distributed with labeling that is substantially identical to the labeling for OFIRMEV®.

29.     The OFIRMEV® labeling includes instructions for administering OFIRMEV® to treat pain or fever in an adult human or an adolescent human subject weighing at least 50 kg, in need thereof, by administering to the subject, by an intravenous route of administration, a therapeutically effective amount of a pharmaceutical composition comprising 650 mg of acetaminophen and repeating said administration at least once at an interval of 4 hours. A true and correct copy of the OFIRMEV® labeling is attached as Exhibit C.

30.     For instance, Section 2.2 of the OFIRMEV® labeling recites that for adults and adolescents weighing 50 kg and over, "the recommended dosage of OFIRMEV is 1000 mg every 6 hours or 650 mg every 4 hours, with a maximum single dose of OFIRMEV of 1000 mg, a minimum dosing interval of 4 hours, and a maximum daily dose of acetaminophen of 4000 mg per day."

31.     Table 1 of the OFIRMEV® labeling also contains recommended dosing information for adults and adolescents weighing 50 kg and over, reciting that the "[d]ose given every 4 hours" is "650 mg."

32.     Section 2.4 of the OFIRMEV® labeling provides instructions and/or recommendations for dosing and recites, in pertinent part, that "[f]or doses less than 1000 mg, the appropriate dose must be withdrawn from the vial and placed into a separate container prior to administration. Using aseptic technique, withdraw the appropriate dose (650 mg or weight-based) from an intact sealed OFIRMEV vial and place the measured dose in a separate empty, sterile container (e.g. glass bottle, plastic intravenous container, or syringe) for intravenous infusion . . . ."

33.     Section 6.1 of the OFIRMEV® labeling reports on clinical trials in which patients were administered 650 mg OFIRMEV® every 4 hours.

34.     Section 14.1 of the OFIRMEV® labeling describes acute pain studies in adults in which patients were administered 650 mg OFIRMEV® every 4 hours. The OFIRMEV® labeling reports that patients receiving OFIRMEV® experienced a statistically significant greater reduction in pain intensity over 24 hours compared to placebo.

35.     The OFIRMEV® labeling therefore instructs, recommends, promotes, and/or encourages medical care providers to practice the methods of at least Claims 1 and 39 of the '012 patent.

36.     The foregoing information in the OFIRMEV® labeling is essential for the safe and effective use of the drug, particularly given the warnings in the labeling concerning potential dosing errors. As the warning in the Highlights of Prescribing Information indicates, "[t]ake care when prescribing, preparing, and administering OFIRMEV Injection to avoid dosing errors

which could result in accidental overdose and death." The Highlights continue: "Acetaminophen has been associated with cases of acute liver failure, at times resulting in liver transplant and death. Most of the cases of liver injury are associated with the use of acetaminophen at doses that exceed the recommended maximum daily limits . . . ."

37.    As such, on information and belief, the FDA will not allow said information to be excised from a proposed labeling for acetaminophen injection products that allegedly are bioequivalent to OFIRMEV®.

38.    Under the Hatch-Waxman Act, the evaluation of infringement involves what the applicant will "likely market if its application is approved." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1248-49 (Fed. Cir. 2000) (citing *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997)).

39.    Upon information and belief, the FDA will require the labeling for Braun's Generic Product, if approved, to contain recommendations and/or instructions that are identical or substantially identical to those set forth above from the OFIRMEV® labeling and, therefore, will contain recommendations and/or instructions for treating pain or fever in an adult human or an adolescent human subject weighing at least 50 kg, in need thereof, by administering to the subject, by an intravenous route of administration, a therapeutically effective amount of a pharmaceutical composition comprising 650 mg of acetaminophen and repeating said administration at least once at an interval of 4 hours.

40.    Upon information and belief, based on the labeling that is likely to be required by the FDA for Braun's Generic Product, if approved, Braun's Generic Product will be administered to treat pain or fever in an adult human or an adolescent human subject weighing at least 50 kg, in need thereof, by administering to the subject, by an intravenous route of

administration, a therapeutically effective amount of a pharmaceutical composition comprising 650 mg of acetaminophen and repeating said administration at least once at an interval of 4 hours, which administration will constitute direct infringement of at least Claims 1 and 39 of the '012 patent. Upon information and belief, this will occur at Defendant's active behest, and with Defendant's intent, knowledge, and encouragement. Upon information and belief, Defendant will actively induce, encourage, and abet this infringement with knowledge that it is in contravention of Mallinckrodt's rights under the '012 patent.

41.     Upon information and belief, Braun's Generic Product is a composition especially made for use in treating pain or fever in an adult human or an adolescent human subject weighing at least 50 kg, in need thereof, by administering to the subject, by an intravenous route of administration, a therapeutically effective amount of a pharmaceutical composition comprising 650 mg of acetaminophen and repeating said administration at least once at an interval of 4 hours, and is not a staple article or commodity of commerce suitable for any substantial noninfringing use.

42.     Braun's submission of NDA No. 204957 to the FDA constitutes infringement of the '012 patent under 35 USC § 271(e)(2)(A). Moreover, Braun intends to commercially manufacture, import, use, offer for sale, or sell Braun's Generic Product and/or induce or contribute to such conduct. Said actions would constitute infringement of the '012 patent under 35 USC § 271(a), (b), and/or (c).

43.     Upon information and belief, Braun was aware of the patents-in-suit prior to filing NDA No. 204957, and its actions render this an exceptional case under 35 U.S.C. § 285.

44.     The acts of infringement by Defendant set forth above will cause Plaintiffs irreparable harm for which they has no adequate remedy at law, and will continue unless enjoined by this Court.

## COUNT I
### (INFRINGEMENT OF THE '218 PATENT)

45.     Plaintiffs incorporate each of the preceding paragraphs 1 to 44 as if fully set forth herein.

46.     Braun's submission of NDA No. 204957, including its Paragraph IV certification, constitutes infringement of the '218 patent by Braun pursuant to 35 U.S.C. § 271(e)(2).

47.     Upon information and belief, upon FDA approval of NDA No. 204957, Braun will infringe the '218 patent by making, using, offering to sell, or selling Braun's Generic Product in the United States, and/or importing Braun's Generic Product into the United States, and by actively inducing and/or contributing to infringement by others, in violation of 35 U.S.C. § 271(a), (b), and/or (c).

48.     Upon information and belief, Braun had actual and constructive knowledge of the '218 patent prior to filing of NDA No. 204957 and acted without a reasonable basis for a good faith belief that it would not be liable for infringing the '218 patent.

## COUNT II
### (DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '218 PATENT)

49.     Plaintiffs incorporate each of the preceding paragraphs 1 to 48 as if fully set forth herein.

50.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

51.     Plaintiffs are further entitled to a declaration that, if Braun, prior to patent expiry, commercially manufactures, uses, offers for sale, or sells Braun's Generic Product within the

United States, imports Braun's Generic Product into the United States, or induces or contributes to such conduct, Braun would infringe the '218 patent under 35 U.S.C. § 271(a), (b), and/or (c).

52.     Plaintiffs are entitled to an injunction restraining and enjoining Defendant and its officers, agents, attorneys and employees, and those acting in privity or concert with it, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States of any of Braun's Generic Product until the expiration of the '218 patent, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled.

53.     Plaintiffs will be irreparably harmed by Braun's infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

## COUNT III
### (INFRINGEMENT OF THE '012 PATENT)

54.     Plaintiffs incorporate each of the preceding paragraphs 1 to 53 as if fully set forth herein.

55.     Braun's submission of NDA No. 204957 constitutes infringement of the '012 patent pursuant to 35 U.S.C. § 271(e)(2).

56.     Upon information and belief, upon FDA approval of NDA No. 204957, Braun will induce and/or contribute to infringement of at least claims 1 and 39 of the '012 patent by making, using, offering to sell, or selling Braun's Generic Product in the United States, and/or importing Braun's Generic Product into the United States, in violation of 35 U.S.C. § 271.

57.     Upon information and belief, upon FDA approval of NDA No. 204957, doctors, nurses, and other medical professionals will directly infringe at least claims 1 and 39 of the '012 patent by using Braun's Generic Product, in violation of 35 U.S.C. § 271(a). Braun's Generic Product will be administered to treat pain or fever in an adult human or an adolescent human

subject weighing at least 50 kg, in need thereof, by administering to the subject, by an intravenous route of administration, a therapeutically effective amount of a pharmaceutical composition comprising 650 mg of acetaminophen and repeating said administration at least once at an interval of 4 hours, which administration will constitute direct infringement of at least Claims 1 and 39 of the '012 patent.

58.    Upon information and belief, this direct infringement will occur at Braun's active behest, and with Braun's intent, knowledge, and encouragement. Braun will intentionally encourage infringement of at least Claims 1 and 39 of the '012 patent at least by way of the labeling for Braun's Generic Product which will contain recommendations and/or instructions for treating pain or fever in an adult human or an adolescent human subject weighing at least 50 kg, in need thereof, by administering to the subject, by an intravenous route of administration, a therapeutically effective amount of a pharmaceutical composition comprising 650 mg of acetaminophen and repeating said administration at least once at an interval of 4 hours.

59.    Upon information and belief, Braun is aware of the '012 patent, which is listed in the Orange Book with respect to OFIRMEV®, and Braun will actively induce, encourage, and abet this infringement with knowledge that such conduct is in contravention of Mallinckrodt's rights under the '012 patent, in violation of 35 U.S.C. § 271(b).

60.    Upon information and belief, Braun's Generic Product is a composition for use in practicing at least Claims 1 and 39 of the '012 patent. Claims 1 and 39 of the '012 patent require administration of intravenous acetaminophen. Braun's Generic Product is intravenous acetaminophen. Accordingly, Braun's Generic Product constitutes a material part of the invention of the '012 patent.

61.     Upon information and belief, Defendant is aware of the labeling for OFIRMEV®, which instructs how to use OFIRMEV® to practice the methods of at least Claims 1 and 39 of the '012 patent. Accordingly, upon information and belief, Braun knows that its Generic Product, which is proposed as a generic version of OFIRMEV®, is especially made or especially adapted for use in practicing at least Claims 1 and 39 of the '012 patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use. Braun will intentionally encourage infringement of at least Claims 1 and 39 of the '012 patent at least by way of the labeling for Braun's Generic Product which the FDA likely will require to contain recommendations and/or instructions for treating pain or fever in an adult human or an adolescent human subject weighing at least 50 kg, in need thereof, by administering to the subject, by an intravenous route of administration, a therapeutically effective amount of a pharmaceutical composition comprising 650 mg of acetaminophen and repeating said administration at least once at an interval of 4 hours.

62.     Upon information and belief, Braun is aware of the '012 patent, which is listed in the Orange Book with respect to OFIRMEV®, and will contribute to infringement of the '012 patent by offering to sell or selling within the United States or importing into the United States Braun's Generic Product, in violation of 35 U.S.C. § 271(c).

63.     Upon information and belief, Braun had actual and constructive knowledge of the application that later issued as the '012 patent prior to filing NDA No. 204957 and acted without a reasonable basis for a good faith belief that they would not be liable for infringing the '012 patent upon its issuance.

## COUNT IV
### (DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '012 PATENT)

64.     Plaintiffs incorporate each of the preceding paragraphs 1 to 63 as if fully set forth herein.

65.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

66.     The Mallinckrodt Plaintiffs are entitled to a declaration that, if Braun, prior to patent expiry, commercially manufactures, uses, offers for sale, or sells Braun's Generic Product within the United States, imports Braun's Generic Product into the United States, or induces or contributes to such conduct, Braun would infringe the '012 patent under 35 U.S.C. § 271(a), (b) and/or (c).

67.     An actual controversy has arisen and now exists between the parties concerning whether Braun will directly or indirectly infringe the '012 patent.

68.     The Mallinckrodt Plaintiffs are entitled to an injunction restraining and enjoining Defendant and its officers, agents, attorneys and employees, and those acting in privity or concert with it, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States of any of Braun's Generic Product until the expiration of the '012 patent, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled.

69.     The Mallinckrodt Plaintiffs will be irreparably harmed by Braun's infringing activities unless those activities are enjoined by this Court. The Mallinckrodt Plaintiffs do not have an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.      A judgment that Defendant infringed and is infringing each of the patents-in-suit;

B.      An order issued pursuant to 35 U.S.C. § 271(e)(4) that the effective date of any approval of Defendant's NDA No. 204957 shall not be earlier than the expiration date of the patents-in-suit, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

C.      An order extending the 30-month stay following Plaintiffs' receipt of a notice of certification under 21 U.S.C. § 355(b)(2)(A)(iv) with respect to the '012 patent;

D.      A declaration that if Defendant, prior to patent expiry, commercially manufactures, uses, offers for sale, or sells Braun's Generic Product within the United States, imports Braun's Generic Product into the United States, or induces or contributes to such conduct, Defendant would infringe the patents-in-suit;

E.      A preliminary and permanent injunction restraining and enjoining Defendant and its officers, agents, attorneys and employees, and those acting in privity or concert with it, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States of any of Braun's Generic Product until the expiration of the patents-in-suit, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

F.      That Plaintiffs be awarded monetary relief if Defendant commercially manufactures, uses, offers for sale, or sells its generic version of Plaintiffs' OFIRMEV® brand product, or any other product that infringes or induces or contributes to the infringement of the patents-in-suit, within the United States before the latest expiration date of the patents-in-suit,

including any extensions and/or additional periods of exclusivity to which Plaintiffs are or becomes entitled;

G.     A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

H.     An award of costs and expenses in this action; and

I.     Such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com
*Attorneys for Mallinckrodt IP, Mallinckrodt*
*Hospital Products Inc., and SCR Pharmatop*

OF COUNSEL:

Kenneth G. Schuler
Marc N. Zubick
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

Daniel G. Brown
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200

Melissa A. Brand
LATHAM & WATKINS LLP
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

*Attorneys for Mallinckrodt IP and*
*Mallinckrodt Hospital Products Inc.*

Charles A. Weiss
Merri C. Moken
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3200

*Attorneys for SCR Pharmatop*

April 3, 2017
10941795